**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RYAN J. HOWARD

Petitioner,

vs.

AL JAZEERA AMERICA, LLC,
AL JAZEERA MEDIA NETWORK,
AL JAZEERA INTERNATIONAL (USA) INC.,
AND DEBORAH DAVIES

Respondents.

Case No. 18-mc-00130

RELATED CASES:
*Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 & 16-cv-00014 (KBJ) (RMM) (D.D.C.)

REDACTED BY PETITIONER

**AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO QUASH AL JAZEERA'S SUBPOENA SERVED ON VERIZON WIRELESS**

# TABLE OF CONTENTS

**Page**


RELEVANT BACKGROUND ....... 2

I. The Underlying Actions ....... 2

II. The Partial Discovery to Date Confirms Ryan Howard Had Relationships [redacted] ....... 4

A. [redacted] ....... 5

B. [redacted] ....... 6

C. [redacted] ....... 6

III. The Al Jazeera Respondents Pursued Other Avenues Before the Verizon Subpoena, But Ryan Howard Discarded His iPhones and Otherwise Resisted Discovery ....... 8

IV. Ryan Howard's Motion to Quash The Verizon Subpoena ....... 9

ARGUMENT ....... 10

I. This Court Should Deny the Motion To Quash The Verizon Subpoena ....... 10

A. The Requested Discovery Is Highly Relevant ....... 11

B. The Requested Discovery Is Proportional ....... 12

C. The Requested Discovery Is Timely ....... 13

D. Ryan Howard Failed to Confer in Good Faith Before Filing This Motion, Which Violates Local Civil Rule 7(m) ....... 14

CONCLUSION ....... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott GmbH & Co. KG v. Yeda Research & Dev., Co.*,
576 F. Supp. 2d 44 (D.D.C. 2008) ....................14

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
93 F. Supp. 2d 1 (D.D.C. 2000) ....................14

*Edmond v. Am. Educ. Servs.*,
823 F. Supp. 2d 28 (D.D.C. 2011) ....................11

*Flanagan v. Wyndham Int'l Inc.*,
231 F.R.D. 98 (D.D.C. 2005)....................10

*Glob. HTM Promotional Grp., Inc. v. Angel Music Grp. LLC*,
No. 6-cv-20441, 2007 WL 221423 (S.D. Fla. Jan. 26, 2007)....................13

*Hickman v. Taylor*,
329 U.S. 495 (1947) ....................12

*Moldea v. New York Times Co.*,
15 F.3d 1137 (D.C. Cir. 1994) ....................11

*Montgomery v. Risen*,
197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017)....................11

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984) ....................12

*Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*,
Case Nos. 16-cv-00013 & 16-cv-00014 (KBJ) (RMM) (D.D.C.) ....................1

*Smith v. Maryland*,
442 U.S. 735 (1979) ....................13

**Other Authorities**

FED. R. CIV. P. 26(b)(1)....................11

FED. R. CIV. P. 45....................11

Local Rule 7(m) ....................1, 14

Local Rule 7.1(a)(3) ....................15

Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) LLC, and Deborah Davies (collectively, the "Al Jazeera Respondents") respectfully submit this memorandum of law in opposition to the motion to quash their subpoena *duces tecum* served on Verizon Communication Inc., Cellco Partnership, Inc., d/b/a Verizon Wireless (the "Verizon Subpoena"). The motion to quash was filed by Ryan Howard in connection with the consolidated actions styled as *Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 & 16-cv-00014 (KBJ) (RMM) (D.D.C.) (the 'Underlying Actions").[1]

In the Underlying Actions, Howard alleges that the Al Jazeera Respondents defamed him by broadcasting a documentary that included statements about his use of performance enhancing substances ("PES"). The Verizon Subpoena seeks more records of Howard's communications with various [REDACTED], which are highly relevant to the Al Jazeera Respondents' defense that their reporting was accurate. Importantly, the Al Jazeera Respondents only served the Verizon Subpoena following extensive efforts to obtain discovery directly from Howard—which ultimately revealed that Howard discarded multiple iPhones from the relevant timeframe. Under these circumstances, the Verizon Subpoena is proportional and timely. But because Howard was concerned about what his iPhone records would show, he violated Local Civil Rule 7(m) by rushing to quash the Verizon Subpoena without meeting and conferring in good faith. This Court should deny the motion to quash in its entirety.

Should this Court need further confirmation that the discovery being sought is appropriate, it can turn to the words of Ryan Zimmerman, Howard's Co-Plaintiff in the Underlying Actions. When he spoke publically with reporters after suing the Al Jazeera Respondents, Zimmerman "said he was willing to open up his entire life, including phone and

[1] Through minute orders entered under these case numbers on November 18, 2016, Howard's action was consolidated with Ryan Zimmerman's action.

email records, to discovery as part of the defamation suit."[2] A related *Washington Post* article entitled "Ryan Zimmerman Forgoes His Privacy in an Effort to Clear His Name" reported that "[h]e'd studied the law on 'disclosure' and realized that he'd have to open up every corner of his private life—every email he'd ever written, every phone record."[3] The article went on to explain that, according to Zimmerman:

> "Privacy is really not privacy anymore for me." What's up for grabs? "Anything. Every email you've ever sent. All of your phone records. Those are two pretty invasive examples," Zimmerman said. "Anything you think you wouldn't want people to see."[4]

## RELEVANT BACKGROUND

### I. THE UNDERLYING ACTIONS

The Underlying Actions were commenced after the December 27, 2015 broadcast of the documentary "*The Dark Side: Secrets of the Sports Dopers*" (the "Documentary"), which the Al Jazeera Respondents produced. The Documentary investigated how doctors and pharmacists take extreme measures and use deception to secretly supply PES to professional athletes. PES are often illegal and banned by professional sports organizations, because they confer an unfair advantage to the athletes who use them to pad their statistics and prolong their careers at the expense of others who play by the rules.

The Al Jazeera Respondents realized that PES suppliers and users would not speak openly with the media. Therefore, the Documentary followed Liam Collins, an aging British track star who infiltrated a network of PES peddlers by professing to be desperate to qualify for

---

[2] *Ryan Zimmerman Says He's Never Thought of Taking PEDs*, ESPN (Feb. 24, 2016), http://www.espn.com/mlb/story/_/id/14830164/nationals-zimmerman-defends-ped-allegations.

[3] *Ryan Zimmerman Forgoes His Privacy in an Effort to Clear His Name*, WASH. POST (Feb. 23, 2016) https://www.washingtonpost.com/sports/nationals/ryan-zimmerman-forgoes-his-privacy-in-an-effort-to-clear-his-name/2016/02/23/dbf5815c-da4d-11e5-891a-4ed04f4213e8_story.html?utm_term=.296cd4f80a8f.

[4] *Id.*

the 2016 Olympics. Weaving his way through several contacts, Collins was told how suppliers and athletes avoid detection with aliases, phony diagnoses, and falsified or destroyed records. Eventually, Collins met a pharmacist named Charles Sly, whom PES network members described as "a genius at outwitting WADA [The World Anti-Doping Agency]."[5]

Using hidden cameras, Collins recorded twenty-seven hours of conversations with Sly, who provided an extended tutorial about how he secretly supplied PES to professional athletes and taught them to avoid detection during drug tests. Sly showed Collins what he claimed were PES inside his refrigerator and even provided a sample to Collins during filming.[6] In another noteworthy scene, Taylor Teagarden, a former catcher for the Chicago Cubs, admitted to taking banned drugs supplied from Sly.[7] The footage also showed Sly telling Collins about six other professional athletes who used PES—including Howard, a former first baseman for the Philadelphia Phillies, and Zimmerman, a current first baseman for the Washington Nationals.

On January 5, 2016, Howard and Zimmerman filed the Underlying Actions seeking millions of dollars in defamation damages from the Al Jazeera Respondents.[8] Howard and Zimmerman contend their claims are supported by Sly's hostage-style video, in which he disavows everything filmed in the Documentary while visibly nervous and reading from a script.[9] But Sly only recanted because he was intimidated into doing so after prominent professional athletes learned he had unwittingly revealed their PES secrets. To that end, in December 2015, two "P.I.s" from Phenix Investigations, Inc. ("Phenix") went to Sly's home and

---

[5] *See* Declaration of Teale Toweill dated September 26, 2018 ("Toweill Decl."), Ex. A, Documentary Tr. at 13.
[6] *Id.* at 15-16.
[7] *See id.* at 22-23.
[8] *See* Zimmerman Orig. Compl., ¶ 61, Case No. 16-cv-00013; Howard Orig. Compl., ¶ 64, Case No. 16-cv-00014.
[9] Sly's 54-second video is available at https://www.youtube.com/watch?v=sf2-8V0K3oM.

barraged him with 96 text messages and 26 calls.[10] One of Phenix's multiple calls with Sly on the same day that his video was publically released lasted over an hour.[11] The Al Jazeera Respondents are entitled to obtain discovery regarding, among other things, whether Howard or his representatives were in any way involved in the Phenix scheme that prompted Sly's video.

## II. THE PARTIAL DISCOVERY TO DATE CONFIRMS RYAN HOWARD HAD RELATIONSHIPS [REDACTED]

Howard's motion to quash is his latest attempt to conceal information about his relationships [REDACTED]—a topic that goes to the heart of the Underlying Actions. Notwithstanding Howard's allegations, discovery has shown that he and Zimmerman [REDACTED].




[10] *See* Toweill Decl., ¶ 7 & Ex. B (attaching call records between Phenix and Sly).

[11] *See* Toweill Decl., Ex. B, at 8.

**A.** [redacted]

Howard has tried to distance himself from Sly, and swore in an interrogatory response that "he has no recollection of ever meeting or communicating with Sly."[12] That statement is demonstrably false.

[redacted]

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted][14]

Beyond selling supplements, Sly and Riley's company, Elementz Nutrition, was designed to allow them to "get guys into pharmacy stuff."[15] [redacted]"[16]

---

[12] Toweill Decl., Ex. R, at Interrogatory Response No. 1.

[13] Riley and Sly went into business after being introduced by a football player, Dustin Keller. *See* Toweill Decl., Ex. C, Riley Dep. Tr. 31:24-32:1, 50:3-19; *see also* Toweill Decl., Ex. D, at KRUMS-0000852 at 55-56, 70-71 (business plan listing Riley and Sly on management team for Elementz Nutrition).

[14] Toweill Decl., Ex. E, at HOWARD-0005142 to HOWARD-0005144, HOWARD-0005147; *see also* Toweill Decl., Ex. C, Riley Tr. 20:8-21:8 ([redacted]

[15] *See* Toweill Decl., Ex. F, at AJ-HZ_0032065.

[16] The Al Jazeera Respondents disagree with these designations, and are challenging them.

**B.** [REDACTED]

[REDACTED] who was recruited by Sly and Riley to treat clients at a sports facility.[18] Indeed, [REDACTED], Sly, and Riley were all so close that they considered starting a new business together called "Elementz Rx."[19]

[REDACTED] Relatedly, Dr. Rucker's former nurse testified that when Dr. Rucker gave out testosterone and other banned PES like human growth hormone, he often would not keep the records.[22] She also testified that Dr. Rucker would frequently make arrangements to see famous athletes after-hours with no other staff present.[23]

**C.** [REDACTED]

[REDACTED]

---

[17] *See* Toweill Decl., Ex. G, [REDACTED]

[18] *See id.* 10:4-21; Ex. H (photograph of Riley, Howard, and football player Mike Neal at the sports facility where [REDACTED] worked).

[19] *See* Toweill Decl., Ex. I, at RILEY0000030; RYWAAC-0000008.

[20] *See* Toweill Decl., Ex. G, [REDACTED] 28:12-18, 29:14-22, 33:16-23.

[21] *See id.* 24:12-26:21, 66:4-8.

[22] *See* Toweill Decl., Ex. J, Adams Dep. Tr. 37:14-38:24.

[23] *See id.* 17:20- 18:15.

[24] *See* Toweill Decl., Ex. K ("QuickConfirm License Verification Report" for [REDACTED]).

[redacted]

25 *See* Toweill Decl., Ex. L, at HOWARD-0004982.

26 *See* Toweill Decl., Ex. M, Byrd Dep. Tr. 81:5-82:3.

27 *See Five Bodybuilders to Admit Taking Steroids*, (Apr. 30, 2015), https://www.discovery.uk.com/blog/the-five-most-famous-bodybuilders-to-admit-taking-steroids; *Drugs and the Evolution of Bodybuilding* (Aug. 8, 2014), https://www.theatlantic.com/health/archive/2014/08/drugs-and-the-evolution-of-bodybuilding/375100/.

28 *See* Toweill Decl., Ex. L, at HOWARD-0004810.

29 *See id.* at HOWARD-0004993 to HOWARD-0004994, HOWARD-0004996, HOWARD-0004892, HOWARD-0004897, HOWARD-0004914.

30 *See* Toweill Decl., Ex. N, at HOWARD-0004158.

## III. THE AL JAZEERA RESPONDENTS PURSUED OTHER AVENUES BEFORE THE VERIZON SUBPOENA, BUT RYAN HOWARD DISCARDED HIS iPHONES AND OTHERWISE RESISTED DISCOVERY

Despite public proclamations of openness, Howard has resisted discovery of his cell phone communications through unsubstantiated objections and ambiguous responses. After motion practice was threatened, Howard finally produced [redacted] —Howard never preserved nor produced them from his own iPhones.[31] Indeed, Howard has not produced *any* text messages from the multiple iPhones that he used between January 1, 2012 and December 31, 2015.[32] Howard has only produced some text messages from an Android device, none of which date past March 2012. Howard fails to mention this truth in his motion papers, which misleadingly state that he has "already produced hundreds of pages . . . from his mobile devices."[33]

The reason Howard has not produced any records from his iPhones is that he discarded them prior to making any productions in the Underlying Actions. Initially, Howard attempted to conceal these facts. In response to the Al Jazeera Respondents' requests seeking "[a]ll cellular phones and/or smart phones used by [Howard] from 2012 through the date of this Request, for inspection,"[34] Howard responded with various boilerplate objections.[35] Over two months later, in response to follow-up requests, he admitted to "no longer possess[ing]" the iPhones he used

---

31 *See* Toweill Decl., ¶ 18.

32 *See* Toweill Decl., ¶ 34.

33 Player Pet'rs' Mem. of Law 6.

34 *See* Toweill Decl., Ex. O, at Doc. Request Nos. 64.

35 *See* Toweill Decl., Ex. P, at Doc. Request Response Nos. 64.

during the relevant period.[36] For several months, the Al Jazeera Respondents tried to obtain clear information about what happened to Howard's iPhones.[37] No meaningful details emerged.

For its part, Howard's counsel has refused to provide any details about how their client's iPhones were searched for responsive information (if at all) before they were discarded.[38] Because non-party discovery confirms that that Howard exchanged relevant text messages [REDACTED] [REDACTED], his destruction of evidence and attempts to evade discovery gave rise to the Verizon Subpoena and explain the need for the requested iPhone records.

## IV. RYAN HOWARD'S MOTION TO QUASH THE VERIZON SUBPOENA

On August 29, 2018, the Al Jazeera Respondents served the Verizon Subpoena. It covered two phone numbers that Howard self-identified. With respect to those two numbers, the Verizon Subpoena sought two categories of documents: (i) logs sufficient to identify who was communicating in calls, texts, and other electronic messages;[39] and (ii) documents sufficient to identify when Verizon's service commenced, was transferred, or was discontinued.[40]

The Verizon Subpoena defined the relevant timeframe as "January 1, 2012, to the present." Even though Howard's [REDACTED] have been proven to go back at least as far as 2011,[41] a January 1, 2012 starting point was supposed to be uncontroversial because Howard had been agreeable to it when formulating his own discovery responses.[42] Carrying forward the requests in the Verizon "to the present" was necessary not

---

[36] *See* Toweill Decl., Ex. R, at Interrogatory Response No. 12.
[37] *See* Toweill Decl., ¶¶ 25-28.
[38] *See id.*
[39] *See* Toweill Decl., Ex. W, at Doc. Request Nos. 1, 3.
[40] *See id.* at Doc. Request Nos. 2, 4.
[41] *See* Toweill Decl., Ex. E.
[42] *See* Toweill Decl., Ex. R, at Interrogatory Response No. 12 (Howard setting forth purported details about his cell phone plans starting as of January 1, 2012).

only because Sly was still being contacted by Phenix after Howard commenced the Underlying Actions,[43] but also because Howard refused to specify the time and manner in which he disposed of his iPhones.[44]

On September 10, 2018, two days before the Verizon Subpoena's return date, counsel for Howard asked during a telephone conference scheduled for a different reason why the Verizon Subpoena was issued and, after that question was answered, stated that they would be filing a motion to quash.[45] Howard's counsel mischaracterizes this brief exchange in his motion papers as follows:

> When counsel for Howard attempted to meet and confer with Al Jazeera's counsel on September 10, 2018, to narrow the scope of the subpoena, Al Jazeera's counsel refused to consider any modifications to the subpoena, instead insisting on seeking all of Howard's phone records, including relating to calls, for instance, with his family members.[46]

At no point during the September 10, 2018 call did Howard's counsel ask for or propose any modifications to the Verizon Subpoena.[47] The Al Jazeera Respondents are, of course, willing to eliminate the discovery of iPhone records showing communications between Howard and those who have no connection to the Underlying Actions.

## ARGUMENT

### I. THIS COURT SHOULD DENY THE MOTION TO QUASH THE VERIZON SUBPOENA

By attempting to resist discovery, Howard has undertaken a heavy burden that he cannot meet. Quashing a subpoena is an extraordinary measure. *See Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (holding that "court[s] should be loathe to quash a subpoena if

---

43 *See* Toweill Decl., ¶ 7& Ex. B.
44 *See* Toweill Decl., ¶¶ 24-28.
45 *See* Toweill Decl., ¶ 31.
46 Player Pet'rs' Mem. of Law 5.
47 *See* Toweill Decl., ¶ 31.

other protection of less absolute character is possible"). The Al Jazeera Respondents are owed discovery about the full extent of Howard's ████████████████. This Court should, therefore, deny Howard's motion to quash in its entirety.

**A. The Requested Discovery Is Highly Relevant**

The Al Jazeera Respondents are entitled to discovery of all non-privileged information that is relevant to any claim or defense and "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also* FED. R. CIV. P. 45 advisory committee note (observing that scope of discovery under a subpoena is the same). Here, because it is beyond cavil that the discovery requested in the Verizon Subpoena is highly relevant, the motion to quash should be denied.

In the Underlying Actions, Howard alleges that Sly's statements in the Documentary about his PES usage were defamatory. Howard cannot prevail on his claims if the Al Jazeera Respondents show that the statements were true, or substantially true. *See Edmond v. Am. Educ. Servs.*, 823 F. Supp. 2d 28, 35 (D.D.C. 2011) ("Truth is an absolute defense to [a] defamation claim[] . . . ."); *see also Moldea v. New York Times Co.*, 15 F.3d 1137, 1150 (D.C. Cir. 1994) ("'Substantial truth' is . . . generally regarded as a defense to defamation."). This means that information about Howard's communications with the ██████████ is integral to the defense of the Underlying Actions. The Al Jazeera Respondents "must be afforded an opportunity to probe [this] issue of truth during discovery." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 241 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).



The partial discovery obtained to date demonstrates that Howard had ████ ████████████████████████████████ *See supra* pages 4-7. The single best source of evidence about ████████████████ ██████ will likely be logs for the iPhones that Howard was using in the years before the

Documentary exposed his secrets.[48] Equally important, the Verizon service commencement, transfer, and discontinuation dates will finally lend transparency to when this iPhone evidence was tampered with.[49] These critical phone records must be examined properly, as Howard's destruction of his iPhones and his counsel's refusal to describe their purported search protocol (if any) should not be the end of discovery about them. The Verizon Subpoena seeks highly relevant information, and therefore the motion to quash it should be denied.

**B. The Requested Discovery Is Proportional**

Without any substantiation, Howard invokes the "fishing expedition" cliché[50] and argues that the Verizon Subpoena "is certain to generate thousands of pages of irrelevant information."[51] But the law does not permit Howard to foreclose discovery based on his conclusory words and, even he were right, "volume alone is not determinative" of appropriateness. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984). This is particularly true in situations like this one, where there is a "systematic way of conducting the search" for information and the litigation stakes are high. *Id.* (vacating order to quash subpoena that sought six years and 967 cubic feet of documents).

Unable to carry his heavy burden on this motion, Howard begs the Court to give him special treatment because he is a celebrity. For example, Howard says that his "privacy concern is particularly acute given [his] public-figure status" and suggests that, as a result, the Al Jazeera Respondents should not be able to pursue relevant discovery.[52] No legal authorities are cited in

---

[48] *See* Toweill Decl., Ex. W, at Doc. Request Nos. 1, 3.

[49] *See* Toweill Decl., Ex. W, at Doc. Request Nos. 2, 4.

[50] *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

[51] Player Pet'rs' Mem. of Law 4-5.

[52] Player Pet'rs' Mem. of Law 5.

support of this unique notion that a celebrity can unilaterally limit discovery in a lawsuit *they brought*. That is because no such authorities exist—as Zimmerman, Howard's Co-Plaintiff, explained at length to news reporters.[53] *See also Glob. HTM Promotional Grp., Inc. v. Angel Music Grp. LLC*, No. 6-cv-20441, 2007 WL 221423, at *2 (S.D. Fla. Jan. 26, 2007) (denying motion to quash subpoena to Sprint Nextel and rejecting privacy argument because "a person has no legitimate expectation of privacy" in phone numbers they voluntarily turned over to carriers (quoting *Smith v. Maryland*, 442 U.S. 735, 743-744 (1979))). The requested production under the Verizon Subpoena is proportional to the needs of the Underlying Actions, and Howard's motion to quash should be denied.

**C. The Requested Discovery Is Timely**

In straining to argue that the Verizon Subpoena is untimely, Howard resorts to distorting the facts of the Underlying Actions. First, the Verizon Subpoena was not served "on the eve of the close of fact discovery," as Howard would lead this Court to believe in his typical hyperbolic fashion.[54] The Verizon Subpoena was served on August 29, 2018, nearly seven weeks before fact discovery is due to close on October 12, 2018. If anyone has caused delay here with the intention of running out the clock on discovery, it is Howard. Based on the five-week turnaround for an AT&T subpoena as to Sly,[55] had the instant motion to quash not been filed, then the production as to Howard would in all likelihood have been completed before the discovery deadline. Consequently, the Verizon Subpoena is timely.

---

[53] *See supra* notes 2-4 and accompanying text.

[54] Player Pet'rs' Mem. of Law 9.

[55] *See* Toweill Decl., ¶ 29.

Second, Howard says that the Al Jazeera Respondents "stood idly by" for "ten (10) months after learning Howard's cell phone numbers and carrier information."[56] What he fails to mention is that, during those months, the Al Jazeera Respondents sent out dozens of discovery requests, letters, and other communications in good faith attempts to learn why Howard's iPhones had disappeared. The need for the Verizon Subpoena did not become apparent until July/August 2018, when Howard made it absolutely clear that he had not honored his duties to preserve evidence. Although it is somewhat predictable that Howard would not be forthcoming about his spoliation issues, his conduct does not make the Verizon Subpoena any less timely. His motion to quash should be denied.

**D. Ryan Howard Failed to Confer in Good Faith Before Filing This Motion, Which Violates Local Civil Rule 7(m)**

In addition to failing on the merits, the motion to quash can be denied as procedurally defective because Howard failed to meet and confer in good faith before seeking judicial intervention. *See* Local Rule 7.1(m) (establishing prerequisite of conferring "in a good faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement"); *see also Abbott GmbH & Co. KG v. Yeda Research & Dev., Co.*, 576 F. Supp. 2d 44, 48-49 (D.D.C. 2008) (denying motion because movant's perfunctory phone calls and undetailed emails did not truly attempt to "narrow the issues"); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 12 (D.D.C. 2000) (denying motion and opining that "had Plaintiff bothered to comply with the rule in the first place, it may have saved substantial time for the Court and the parties"). The meet-and-confer requirement is not a minor technicality; courts take it very seriously, as its intended purpose is to reduce the extent of motion practice.

---

56 Player Pet'rs' Mem. of Law 3, 8.

Rather than engaging in a meet-and-confer, Howard's counsel placed a single call to each of the Al Jazeera Respondents' counsel to announce that he would be filing the motion to quash. At no point did Howard ask for or propose any modifications to the Verizon Subpoena. *See supra* page 10. Thus, his claim that "Al Jazeera's counsel refused to consider any modifications to the subpoena" is simply false.[57] Had Howard actually approached the Al Jazeera Respondents in good faith, this motion practice might have been avoided or at least narrowed.[58] Disregarding the clear mandate of Local Rule 7.1(a)(3) is unacceptable conduct, and this motion should be denied.

---

[57] Player Pet'rs' Mem. of Law 5.

[58] *See* Toweill Decl., Ex. X.

## CONCLUSION

For the foregoing reasons, the Al Jazeera Respondents respectfully request that this Court deny the Player Petitioners' motion to quash the Verizon Subpoena.

Respectfully submitted.

Dated: September 26, 2018

/s/ Charles Scheeler

Charles P. Scheeler
DLA PIPER LLP
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209
Office: (410) 580-3000
Fax: (410) 580-3001
charles.scheeler@dlapiper.com

Michael D. Hynes (admitted *pro hac vice*)
Andrew L. Deutsch (admitted *pro hac vice*)
Rachel Stevens (admitted *pro hac vice*)
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020
Office: (212) 335-4500
Fax: (212) 335-4501
michael.hynes@dlapiper.com
andrew.deutsch@dlapiper.com
rachel.stevens@dlapiper.com

*Counsel for Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA), Inc., and Deborah Davies*